UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:20-cv-00153

**Aspen Specialty Insurance Company,**
*Plaintiff,*

v.

**Yin Investments USA, LP,**
*Defendant.*

# ORDER

Before the court are the parties' various motions for summary judgment or judgment on the pleadings as well as Aspen's motion to bifurcate trial. The motions are addressed seriatim below.

**A.**  First, Yin moves for partial summary judgment on Aspen's claim for attorney's fees. Aspen's live complaint seeks a declaration of no coverage under insurance contracts and "further seeks recovery of attorney's fees as equitable and just under 28 U.S.C. § 2202, Fed. R. Civ. P. 57[,] and Tex. Civ. Prac. & Rem. Code § 37.009." Doc. 54 at 11 ¶ 32. As Yin correctly points out, however, the federal Declaratory Judgment Act does not itself provide authority to award attorney's fees. Neither does Civil Rule 57. And binding circuit precedent holds that the Texas Declaratory Judgment Act is not substantive law for *Erie* purposes, so "a party may not rely on [that act] to authorize attorney's fees in a diversity case." *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). Aspen argues otherwise only "for the purpose of preserving this issue" for appellate reconsideration. Doc. 80 at 3. Yin's motion for partial summary judgment (Doc. 66) is granted, and Aspen's claim for attorney's fees is dismissed with prejudice.

**B.**  Second, Yin moves for partial judgment on the pleadings as to whether Yin satisfied contractual conditions precedent to coverage under the relevant insurance contracts. Yin argues that Aspen has not satisfied Civil Rule 9(c) by pleading with particularity any conditions precedent allegedly not satisfied. However,

since Yin's motion, Aspen has filed a third amended answer to Yin's intervening third amended counterclaims. *See* Doc. 90. That operative answer pleads in significant detail which conditions precedent to insurance coverage were allegedly not satisfied. Yin's motion for partial judgment on the pleadings (Doc. 71) is denied.

**C.** Third, Aspen moves for summary judgment in its favor as to Yin's claims regarding the two buildings now at issue—the University Drive building and the West Loop building. As to each building, Yin has several claims against Aspen: (a) breach of contract, (b) breach of the duty of good faith and fair dealing, (c) violation of certain Texas Insurance Code provisions, and (d) violation of the Texas Deceptive Trade Practices Act. Aspen's motion is treated as applying to the operative version of Yin's claims. *See* Doc. 88. The standards for summary judgment are well-known and correctly identified in the moving papers.

**1.** As to Aspen's claim for declaratory relief regarding its liability for any July 11, 2018 damage to the University Drive building, Yin is no longer alleging any such loss on July 11, 2018. Doc. 84 at 1 ("Yin does not allege a July 11, 2018 date of loss on the University property or a separate breach of contract claim[] as to that date."). Yin has amended its claim to instead allege a May 9, 2019 date of loss. Because there is no live dispute between the parties as to whether any damage on July 11, 2018, is covered by the relevant contract, Aspen's claim for declaratory relief on that matter is dismissed without prejudice for lack of a justiciable controversy. *See* Fed. R. Civ. P. 12(h)(3).

**2.** As to Aspen's obligation to cover alleged May 9, 2019 damage to the University Drive property, the court rejects Aspen's arguments for judgment as a matter of law.

**a.** Aspen first argues that Yin failed to give prompt notice of that loss, as required by the insurance policy. The notice required is not simply awareness that a May 9 storm occurred, as Yin argues; instead, the contract requires notice to Aspen that Yin believes it suffered covered property loss from a May 9 storm. That

notice did not occur until February 12, 2021, when Yin served its expert's report on Aspen. That was 21 months after the alleged May 9, 2019 storm. Without an explanation for that delay in the summary-judgment record, the court agrees with Aspen that Yin's notice was not prompt as a matter of law. *See, e.g.*, *Montemayor v. State Farm Lloyds*, 2016 WL 4921553, at *1–3 (S.D. Tex. Apr. 7, 2016) (almost-two-year delay held unreasonable).

At the same time, breach of a prompt-notice provision "must prejudice the insurer in some tangible way" to qualify as material and preclude coverage. *Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*, 690 F.3d 342, 349 (5th Cir. 2012). Genuine factual disputes exist as to Aspen's claim of prejudice. For example, the extent to which Aspen was deprived of its ability to investigate any May 9, 2019 loss is the subject of reasonable dispute, as Aspen at least knew of the existence of the May 9, 2019 hail storm when investigating Yin's original claim of loss. Accordingly, summary judgment for Aspen on its no-prompt-notice argument is denied.

**b.**  Aspen next argues that Yin has not produced evidence that would give a reasonable jury a basis on which to allocate damages between the alleged May 9, 2019 hail storm and other sources of damages that are not covered by the insurance policy. *See Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018). But Yin has produced testimony by its investigator, Bryan Hill, who examined the roof and provided reasons for discounting prior events and for limiting his estimate of May 9, 2019 damage to certain areas of the roof. *See* Doc. 84 Ex. M. He opined on the severity of prior wind events, the nature of damage to certain items as it relates to the size of hail alleged in the May 9 storm, and why certain TPO roofing membranes over certain areas could be ruled out as damaged by hail. Aspen, of course, has substantial criticism of Hill's conclusions. But those criticisms go to the weight of his testimony, not its legal sufficiency to provide a reasonable basis for segregation. Yin has enough evidence, if credited, for a jury to allocate damages.

**3.** As to Yin's claim that Aspen breached the common-law duty of good faith and fair dealing, the Texas Insurance Code, and the Texas DTPA as to the University Drive building, Aspen is entitled to summary judgment.

In Texas, insurance companies have a duty to deal fairly and in good faith with an insured in the processing of claims. *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). To succeed on a bad-faith claim, the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim. *See id.*

An insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). An insured can prevail on its bad faith claim if it shows that there "were no facts before the insurer which, if believed, would justify denial of the claim." *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 542 (S.D. Tex. 1999). On the other hand, "if, after a reasonable investigation, the insurer has evidence showing that the insured's claim may be invalid, a bad faith action is not viable." *Id.* An insurer can deny debatable claims without being liable for breach of the duty of dealing in good faith. *Id.*

Here, Aspen hired an investigator, who inspected the property on at least two occasions, and Aspen's reliance on its investigator's findings was prima facie reasonable due to the nature, value, and complexity of the claim and the investigator's report. Yin's evidence does not so undermine that report as to allow a jury to conclude, not only that Yin is entitled to coverage, but that any conclusion otherwise was in bad faith because coverage is that clear. Unlike the insured in *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998), Yin has not identified evidence that Aspen immediately marked Yin's claim as suspicious, failed to examine whether a hail storm occurred, or ignored commonly considered evidence.

The record here is akin to that in *Douglas*, showing at most a bona fide coverage dispute. Nothing in Aspen's investigator's report suggests that his inspection was done in a manner calculated to construct a pretextual basis for denial. And nothing about the history of the development of that report fairly supports such an inference. Charles Bertschi, one of Aspen's inspectors, stated that he and the other inspectors had to return to the property in October because "we were not provided the ability, on our first visit (August 22, 2019), to take destructive testing." He also stated that they went back in October because "[w]e needed to complete . . . a more thorough investigation of the roof. We were not given enough time during the August inspection." Bertschi stated that the delay in rescheduling (from August to October) was in part based on "back and forth with the public adjuster" and "delays related to weather." He further explained that, after the October 2019 inspection, the inspectors issuing the report were delayed because they were waiting for the public adjuster to "present his claim or any documents in support of his claim. And then none were received. And we waited for the engineer to produce his findings."

Against this evidence, Yin provides no evidence showing a pretextual basis for denial. Yin's expert report may or may not support recovery but does not support a reasonable inference of bad faith. Yin fails to provide record support for its argument that Aspen did not share information with Yin about an alleged prior adjuster's report. Yin also fails to identify record support for its argument that one of Aspen's investigators misrepresented to Yin how quickly repairs need to be made and what type of cash value would be available if the repairs were not timely made. Likewise, Yin fails to provide record support for its argument that a reinspection of the property concluded that there were covered damages, much less how that argument would show anything more than a bona fide coverage dispute.

Yin also claims breach of Texas Insurance Code §§ 541 and 542 and of the Texas DTPA as to the University Drive building.

Section 541 prohibits unfair methods of competition and unfair or deceptive acts or practices, as does DTPA § 17.41. Section 542 requires prompt payment of claims. Both acts are "in large measure statutory fleshings-out of the already existing common law requirements." *Douglas*, 37 F. Supp. 2d at 544. Those claims "require the same predicate for recovery as bad faith causes of action," so "if there is no merit to the bad-faith claim, there can be no liability on either of the statutory claims." *Id.* Because Aspen is entitled to summary judgment on the common-law claim, it is also entitled to summary judgment on these claims.

**4.** As to Aspen's obligation to cover damage to the West Loop property, the court rejects Aspen's arguments for judgment as a matter of law.

**a.** Aspen first argues that it is entitled to judgment because Yin failed to give prompt notice of that loss, as required by the insurance policy. Yin gave notice to Aspen as to this building on July 31, 2019, which is sixteen months after the March 10, 2018, date of alleged loss. When the same storm was alleged to damage another of Yin's properties, Yin gave timely notice to Aspen within about a month. But Yin has failed to provide a reason for its delay as to the West Loop property. Yin's notice was not prompt as a matter of law.

That being said, breach of the prompt-notice requirement must be material to foreclose a coverage obligation, as explained above. And genuine factual disputes prevent judgment for Aspen on that prejudice analysis. The building did not burn down or cease to exist during the delay. Aspen's investigator was able to examine it and produce a report about causation. Aspen has substantial arguments about how that report's comprehensiveness may have been impaired by Yin's unreasonable delay. But Yin is entitled to have a jury resolve those fact questions in assessing Aspen's claim of a material breach precluding coverage.

**b.** Aspen urges, as to the West Loop property, that Yin failed to adduce evidence that would give a jury a reasonable basis to distinguish any damage from the March 10, 2018 storm from other

damage not subject to insurance coverage. But Yin's expert has given enough attention to segregation to allow a jury to decide the persuasiveness of Aspen's critiques. Yin's expert states that round dents in the "dryer vent covers indicate that hailstones up to 1.5 inches in diameter had impacted the metal panels and surfaces." Because the vents were installed after an aerial photo of the property on March 27, 2017, he argues, no hail storm prior to that date could have caused the damage, which "provide[s] additional credibility to hail damage caused by the [March] 11, 2018 hail event." He also notes that the majority of new, white-sealant applications were made between April 6, 2017 and April 9, 2019, with the more recent ones being made consistent with repairs made after the March 2018 storm. He reasons: "It would be logical to conclude that if the reported hail event in 2016 caused damage to the roof and resulted in leaks, sealant repairs for leaks would have been noted in the prior historical imagery, this was not the case." And Yin's expert's description of the damage notes that "[t]he exposed deck was bright in color consistent with a recent hail event" and "slightly faded burnish marks." Although that testimony is not conclusive either way, it creates a genuine factual dispute on whether Yin can segregate damages from the March 10, 2018 hail storm and from general wear, tear, and deterioration.

**5.** As to Yin's claims that Aspen breached the common-law duty of good faith and fair dealing, the Texas Insurance Code, and the Texas DTPA as to the West Loop building, Aspen is entitled to summary judgment. The standards governing those claims have been set forth above.

Aspen has put forth evidence showing that it relied on its investigator's conclusions that any damage to the West Loop building's roof was not caused by the March 10, 2018 hail storm, and that such reliance was reasonable given the nature, complexity, and scope of the claim of covered loss. Yin's attempts to show a genuine factual dispute over bad faith fail for lack of evidence at this summary-judgment stage. For instance, Yin pleaded that one of Aspen's investigators was "very combative and uncooperative"

and, instead of inspecting the property, "merely sat around on his cellular telephone the entire time." Doc. 88 ¶¶ 50-51. But Yin provides no evidence of that fact in response to the motion for summary judgment. Pleadings alone do not suffice at this stage.

Yin also does not provide evidence of a September 11, 2019 letter that Bertschi allegedly sent to Yin misrepresenting how quickly repairs need to be made and what type of cash value would be available if the repairs were not timely made. Likewise, Yin fails to identify with any particularity where in the record there is evidence supporting its contention that Aspen did not share conclusions of an independent adjuster. And because Aspen is entitled to summary judgment on the common-law claim, it is also entitled to summary judgment on the Insurance Code and DTPA claims because their standards align, as explained above.

**6.** With the parties' claims now winnowed and ready for trial, the court turns its attention to its duty under Federal Rule of Evidence 611(a) to control the order of examining witnesses and presenting evidence to make trial most effective for determining the truth.

This duty includes attending to "potential confusion" from the order of presentation of evidence, *United States v. Southers*, 583 F.2d 1302, 1309 (5th Cir. 1978), and includes authority to realign the parties' typical order of presenting evidence. "Decisions as to the order of proof lie within the sound discretion of the district courts . . . ." *United States v. Dittrich*, 100 F.3d 84, 86 (8th Cir. 1996). Some courts have determined that the party who proceeds first at trial is "typically the plaintiff, even where the plaintiff seeks only or even primarily a declaratory judgment." *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 418 F. Supp. 2d 380, 383 (S.D.N.Y. 2005) (citing *Rowan Cos., Inc. v. Ainsworth*, 50 F. Supp. 2d 588, 590–91 (W.D. La. 1999)). Other courts, however, consider whether the counter-plaintiff should proceed first given the burdens of proof and which order is more understandable for the jurors. *See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, No. 91C6103, 1995 WL 5895, *3 (N.D. Ill. Jan. 4, 1995) (allowing

counterclaimants to proceed first at trial); *Sweet Jan Joint Venture v. FDIC*, 809 F. Supp. 1253, 1258 (N.D. Tex. 1992) (same).

Here, Aspen's remaining declaratory claims are the mirror image of Yin's counterclaims. And Yin is now the only party seeking to impose a financial responsibility on its counter-party; the court has ruled that Aspen's claim for attorney's fees is foreclosed. The court finds that the goals of Federal Rule of Civil Procedure 1 and Federal Rule of Evidence 611(a) will be promoted by realigning the parties for purposes of presentation at trial. Accordingly, Yin is allowed to present its opening statement first, after which Aspen may present its opening statement. Yin may then first present its evidence, after which Aspen may present its evidence; the parties will then be given the opportunity to present any appropriate rebuttal or surrebuttal evidence. Yin may present a closing argument, followed by Aspen's closing argument, and any rebuttal or surrebuttal closing as appropriate. To avoid confusion, the parties may use terms such as *the insurance company* or *the policy holder*, or simply their proper names.

**D.**  Aspen moves to bifurcate trial by dividing Yin's contractual claims from its extra-contractual claims. Because Aspen has now been granted summary judgment on the extra-contractual claims, the court denies Aspen's motion to bifurcate.

## Conclusion

Yin's motion (Doc. 66) for partial summary judgment on Aspen's claim for attorney's fees is granted. Summary judgment is granted for Yin on Aspen's claim for attorney's fees.

Yin's motion (Doc. 71) for partial judgment on the pleadings as to conditions precedent is denied.

Aspen's motions (Docs. 69, 70) for summary judgment are denied as to Yin's contractual claims and granted as to Yin's non-contractual claims. Summary judgment is granted for Aspen on the non-contractual claims. Regarding the University Drive property, Aspen's claim for declaratory relief as to a July 11, 2018 alleged date of loss is dismissed without prejudice for lack of a justiciable controversy.

Aspen's motion (Doc. 103) to bifurcate is denied as moot.

*So ordered by the court on October 7, 2021.*

J. CAMPBELL BARKER
United States District Judge