

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **YIN INVESTMENTS USA, LP,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **6:20-cv-00153** |
| | § | |
| **ASPEN SPECIALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| *Defendant.* | § | |
| | § | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S BRIEF ON
LIMITING THE SCOPE OF DIRECT EXAMINATION OF EXPERTS**

---

TO THE HONORABLE JUDGE BARKER:

COMES NOW, YIN INVESTMENTS USA, LP (hereinafter "Yin"), Plaintiff in the above-entitled and numbered cause, and briefs the Court in Response to Defendant, Aspen Specialty Insurance Company's (hereinafter "Aspen") Brief on Limiting the Scope of Direct Examination of Experts (the "Brief"), and shows the Court as follows:

## I.     OVERVIEW

Aspen filed a belated "Trial Brief" after the deadline that is essentially a motion for summary judgment on issues it never plead and failed to disclose in the face of well-crafted discovery requests specifically seeking disclosure of Aspen's defensive theories.

It is well established that a party forfeits even potentially meritorious defenses if it fails to timely raise them until the "eve of trial." *See, e.g., Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.),* 511 F. Supp. 2d 742, 789 (S.D. 2005) (citing defense forfeiture cases regarding even "forfeiture of the personal jurisdiction defense," including where the defendant "gambled that it could raise the personal jurisdiction on the eve of trial."); *see also*

*Bradberry v. Jefferson Co.*, 2014 WL 12606305 (E.D. Tex. 2014).

From what Yin is able to glean from the Brief, Yin responds to the following issues presumably raised in Aspen's arguments as follows:

***1.      Can Yin recover replacement cost damages under this RCV policy?***

**Yes**. Proving repair has been completed is not a condition precedent that Yin must prove at trial because Aspen materially breached the insurance agreement before replacement was possible.  Further a plain reading of the Policy makes clear there is not an "election" requirement if a party seeks RCV—RCV is the default and the amount that Aspen agreed to pay.  In the alternative, even if actual replacement or election were conditions precedent, Aspen waived and forfeited that argument because it failed to: (a) specifically state in its pleadings that Yin failed to comply with this newly asserted condition precedent in *any pleading* as required by the federal rules, and (b) Aspen did not disclose this alleged failure even though Yin specifically sought the disclosure of such arguments in discovery.

***2.      Did Steve Shannon (Yin's damages expert) fail to disclose his opinions regarding depreciation and Actual Cash Value?***

**No.** Despite Aspen's repeated false statements and misrepresentations, Shannon expressly provided a detailed ACV opinion and disclosed it in his report and at his deposition.  In a particularly egregious misrepresentation, Aspen informed the Court at the pretrial hearing on October 28, 2021 that Shannon was not asked about and did not testify about his depreciation opinions at his deposition. In reality, Shannon testified repeatedly about his depreciation opinions. *See, e.g.,* Exhibit A, Shannon Depo at 114 ("On bates stamp DRG40…**you'll see a depreciation section**. **I did the max depreciation** for this type of roof system, which was 20 years.") (emphasis added); *Id.* at 115 ("It comes from…the National Association of Home Builders and the Joint Military-Industry **Depreciation Guide**.") (emphasis added); *id.* at 88 ("you put in the square

footage and then…go **back and apply depreciations to that specific line item**" in the estimate) (emphasis added); *id.* at 64, 116, 117, 123.

Moreover, Aspen waived and forfeited any objection to the alleged deficiencies in Steve Shannon's Disclosures when Aspen failed to challenge him by the deadline required by the Amended Scheduling Order, and because Steve Shannon disclosed the basis on which he made his findings for the replacement and actual cash value costs to replace damaged property.

### 3. *Did Bryan Hill (Yin's causation expert) fail to disclose his opinions regarding the need to replace the damaged areas?*

**No**. Hill provided great detail in the expert disclosure, his report, and his deposition that the damaged material required replacement.  Aspen claims Hill never disclosed his reason for why he suggests replacement is necessary in certain areas versus repairing damaged properly.  In reality, Hill stated his reasoning multiple times such as when he was deposed by Aspen's counsel. *See* Dkt. No. 84-24 at 35:2–25, 36:1–20 (Hill explains that re-covering a water saturated roof was impossible);  Dkt. No. 84-24 at 36:1–20, 37:1–12. Hill expressly opined that where, as here, a roof exhibits more than two leaks and the roof exhibits moisture in various areas that the roof should be replaced down to the deck rather than simply spot treated. Dkt. No. 84-24 at 37:1–12.

Again, Aspen waived and forfeited any objection to alleged (though false) deficiencies in Bryan Hill's expert report and disclosures when Aspen failed to challenge Hill by the deadlines in the Amended Scheduling Order, and because Hill properly disclosed his basis for his opinions on the cause of damage to the roof.

## II.    Discussion

### 1. <u>Aspen Has Waived Any Argument That Yin Failed to Satisfy A Supposed Condition Precedent By Not Specifically Pleading the Failure and Not Disclosing the Issue During Discovery.</u>

Aspen has waived any right to raise the issue of whether Yin may recover replacement cost

value for failure to repair or replace the roof within a reasonable time, or because Yin did not give notice to elect to receive replacement cost value within 180 days, because:

1) Aspen failed to plead with specificity that Yin failed to satisfy this supposed condition precedent as required;

2) Aspen failed to disclose during discovery that issue was a basis for Aspen's denial of part of Yin's claim despite direct interrogatories exactly on point;

3) Aspen submitted multiple versions of the proposed jury charge that never raised this issue;

4) Aspen did not list the issue as a contested issue of law or fact in the Pre-trial Order Dkt. No. 102 at 4–6; and

5) Aspen did not comply with the Court's Amended Scheduling Order and no excusable neglect or good cause exist to move the deadline.

Yin does not agree with Aspen that the asserted requirements are conditions precedent to Yin's recovery of replacement cost value.  However, in the alternative, Rule 9(c) of the Federal Rules of Civil Procedure is very clear in that "when denying that a condition precedent has occurred or been performed, a party must do so with particularity." FED. R. CIV. P. 9(c). Here, Aspen did not plead with any particularity that Yin failed to provide Aspen with notice within 180 days.

### a. *Aspen failed to plead with specificity that Yin failed to satisfy this supposed condition precedent as required*

The law is clear: in an action on an insurance policy, the insured policyholder may generally plead compliance with all conditions precedent, but the insurer must plead the insured's failure to comply with particularity. *See* Fed. R. Civ. P. 9(c). "The burden is on the insurer to prove a failure to comply either with a condition precedent or an exclusion." *Cameron Int'l Corp. v. Liberty Ins. Underwriters, Inc. (In re Oil Spill)*, No. 2179, 2012 U.S. Dist. LEXIS 115463, at *32– 33 (E.D. La. 2012).

Yin included an allegation in its Counterclaims that it had met all conditions precedent, satisfying the requirement of Rule 9(c). See, e.g., Dtk. No. 53 at ¶119. In its Answer, Aspen denied generally that Yin had met conditions precedent, but did not plead any specific allegations as to what conditions precedent had not been met. After the Court generously permitted additional time for Aspen to amend its pleading after Aspen failed to state with particularity a condition precedent it relied upon in a motion for summary judgment, Aspen *still failed to plead with any particularity* that Yin did not repair or replace the roof within a reasonable amount of time, and that Yin failed to provide notice within 180 days that Yin would be making a claim on replacement cost value. *See* Dkt. No. 90 at ¶86. Aspen does not state anything regarding failure to repair and replace the roof within a reasonable time or that Yin failed to provide notice within 180 days to recover on replacement cost value. *See* Dkt. No. 90 at ¶86.

Given that Aspen has failed to articulate, with particularity, which conditions precedent it alleges has not been met, all conditions precedent are deemed admitted, and Yin is entitled to judgment as a matter of law as to its meeting the condition precedent. See *Jackson v. Seaboard C. L. R. Co.*, 678 F.2d 992, 1009 (11th Cir. 1982) ("If the party does not deny the satisfaction of the conditions precedent specifically and with particularity, however, **the allegations are assumed admitted and cannot be attacked**.") (emphasis added).

### b.   *Aspen failed to disclose during discovery that issue was a basis for Aspen's denial of part of Yin's claim despite direct interrogatories exactly on point.*

Aspen also failed to disclose during discovery any exclusion that Aspen relied upon. In Yin's Interrogatories to Aspen, request No. 4, Yin specifically asked that Aspen disclose any exclusion for why Yin could not receive his claim in whole or in part. Aspen did not assert in its answer that Yin could not recover on the replacement cost value due to Yin's failure to replace and repair the roof within a reasonable time.

4.      Identify all exclusions under the Policy applied to the Claim made the basis of this Lawsuit, and for each exclusion identified, state the reason(s) that Plaintiff relied upon to apply that exclusion.

**ANSWER:**

The Policy will not pay for loss or damage caused by or resulting from "wear and tear," "rust or other corrosion, decay, deterioration, hidden or latent defect, or any quality in the property that causes it to damage or destroy itself," or "settling, cracking, shirking or expansion." Further, the very minor indications of hail visible at the Property were the cumulative results of years of exposure to the east Texas sky, were old and attenuated, and were not likely to have occurred during the Policy's effective period. Such alleged damage is excluded as its causation was concurrent with excluded causes, such as those set forth above, or not covered as its causation was concurrent with damages occurring before the inception of coverage. The burden of proof is upon the insured to segregate its damages between covered and uncovered loss and it is impossible to segregate the combined and cumulative effects of years of exposure to the east Texas elements and effects caused by other excluded causes from any instances of hail occurring during the coverage period. Defendant also gave late notice of the hail storm. The 12 month delay between the date of the hail storm and date of notice of the claim to Aspen, prejudiced Aspen's ability to timely investigate and evaluate the damage to the roof of the property. Aspen relied upon the language of the Policy and JS Held report produced at ASPEN 000235-ASPEN 000291 in this matter.

c.   *Aspen submitted multiple versions of the proposed jury charge that never raised this issue.*

Similarly, Aspen failed to specifically raise these issues in the proposed jury charge or the contested facts or law section of the Joint Pre-trial Order submitted to the Court. *See* Dkt. No. 102 at 4–6; Dkt. No.122 (providing no jury question on whether Yin failed to repair or replace the damaged property in order to be entitled to the real cost value). Additionally, Aspen did not object to questions number five and number eight in the proposed jury charge which do not limit the amount Yin may receive to actual cash value. *See* Dkt. No. 122 at 13–14, 15–16.

Aspen consciously chose to spring this issue to the forefront only a few days before trial in an ambush to end Yin's case in chief before any evidence was offered. Because Aspen failed to address this new argument in a timely manner it has been waived and Aspen may not now assert it.

2. _Aspen Has Waived Any Argument on Dispositive Issues and Daubert Issues By Failing to Raise the The Issues by the Deadline._

Failure to plead an affirmative defense or condition precedent may result in waiver. FED. R. CIV. P. 8(c) and 9(d); *see also Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 U.S. Dist. LEXIS 135939, at *23–24 (N.D. Tex. 2014). A party asserting such defenses must do so at "the most appropriate time possible." *Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 U.S. Dist. LEXIS 135939, at *23–24 (N.D. Tex. 2014). *See generally Bradberry v. Jefferson Cty., Texas*, No. 1:11-CV-258 (KFG), 2014 WL 12606305 (E.D. Tex. Aug. 7, 2014) (providing an overview of the Court's management of a litany of last-minute motions).

When a party fails to assert an issue at the appropriate time the party may only raise the issue "so long as the defendant raised the defense 'at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond.'" *Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 U.S. Dist. LEXIS 135939, at *23–24 (N.D. Tex. 2014) (quoting *Lucas v. U.S.*, 807 F.2d 414, 417 (5th Cir. 1986)). The prejudice inquiry "considers whether the plaintiff had sufficient notice to prepare for and contest the defense." *Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 U.S. Dist. LEXIS 135939, at *24 (N.D. Tex. 2014).

Aspen had the opportunity to plead any limitation based on limiting recovery to actual cash value based on its knowledge that Yin was seeking the replacement cost value but failed to raise the issue until October 26, 2021, three days before trial. Dkt. No. 120 at 1; Dkt. No. 81 at 1. As such, Aspen has failed to raise the limitation at the "the most appropriate time possible" and has waived the issues unless Yin would not be prejudice. *Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 U.S. Dist. LEXIS 135939, at *24 (N.D. Tex. 2014).

Yin would be ***serverly*** prejudice if the issues Aspen now raises were allowed to proceed. Yin has focused on building its case for the remaining live issues which have been fully briefed and the Court has had time to consider. Yin was not provided the mandatory 21 days to respond to a motion for summary judgment.  Yin was tricked by Aspen into thinking this was not contested issue of law or fact because Aspen provided that list in the pre-trial order that the parties jointly submitted after a lengthy meeting out of town attended by Yin's lead counsel (and client).  Should these issues be allowed to proceed Yin would not only have to reconsider its trial strategy, and witness and time management, but also in essence enter into the discovery process again by reviewing countless documents and re-interviewing witnesses to sufficiently prepare for the newly asserted issue during the trial process itself. As a result, Yin would suffer unfair prejudice, and is suffering prejudice in responding to untimely, groundless trial briefs on the eve of trial.

Similarly, Aspen has waived any *Daubert* objections based on Rule 26 of the Federal Rules of Civil Procedure. "[Aspen] fail[s] to explain why they could not have asserted this Rule 26(a) argument in their motion by the deadline set in the court's scheduling order for challenging experts." *See State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, No. 3:16-CV-2255-L, 2019 U.S. Dist. LEXIS 55052, at *16 (N.D. Tex. 2019). Aspen failed to comply with the Court's Amended Scheduling Order that was ordered on April 13, 2021 which states the deadline for *Daurburt* motions must be filed by July 18, 2021. *See* Dkt. No. 52 at 3. Aspen failed to comply with the Court's order despite receiving Yin's experts' reports, disclosures, and taking experts' depositions. *See* Dkt. No. 84-24 at 1:9-11 (deposition of Bryan Hill occurring on March 24, 2021).

Accordingly, any *Daubert* argument is waived by Aspen. *State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, No. 3:16-CV-2255-L, 2019 U.S. Dist. LEXIS 55052, at *16–17 (N.D. Tex. 2019).

3. _Aspen Is Not Entitled to Leave to Amend Pleadings or To File Dispositive Motions On these Issues_

Aspen has failed to comply with the Court's Amended Scheduling Order. *See* Dkt. No. 81. As was noted by the Court, Aspen's "Brief" is a veiled attempt on the eve before trial to submit both a motion for summary judgement and a *Daubert* motion to exclude Plaintiff's experts' testimony on issues regarding replacement cost value which remains a live issue in this case. The Amended Scheduling Order provided Aspen with an opportunity to raise these issues and be heard before the Court. *See* Dkt. No. 81 at 4 (requiring all dispositive motions and *Daubert* motions be filed with the Court by July 18, 2021). The Court provides the scheduling to "ensure prompt and orderly litigation in which courts have a legitimate interest." *Beauchamp v. City of Dixon*, No. 11 CV 50121, 2014 U.S. Dist. LEXIS 29453, at *10 (N.D. Ill. 2014). When a deadline has past, and a party still seeks to submit material upon which the deadline has past they must show the failure to adhere to the deadline was due to "excusable neglect" and that "good cause" exists. *Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 U.S. Dist. LEXIS 92632, at *3 (E.D. Tex. 2017).

> Relevant factors used to determine "excusable neglect" include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the movant's reasonable control; and (4) whether the movant acted in good faith.

*Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 U.S. Dist. LEXIS 92632, at *4 (E.D. Tex. 2017).

### a. **The Factors Weigh Overwhelmingly in Favor Against Finding Excusable Neglect Due to Unfair Prejudice to Plaintiff**

Aspen did not allege any of these factors in its Brief to the Court. However, all factors weigh in favor of Yin. The danger of prejudice is that Yin, in response to Aspen's supposed "brief" which acts as a motion for summary judgment, is deprived of the opportunity to properly respond

to Aspen's arguments. Aspen asserts Yin failed to perform a condition precedent of repairing and replacing the roof within a reasonable time to be owed the replacement cost value.  Even looking past Aspen's failure to raise this issue until now, a proper response would require Yin to gather the relevant facts and present them to the Court showing Yin could still repair or replace the property within a reasonable time under the facts of the case such as potential supply shortages, labor shortage, delay in contractor assignments, and other various reasons. Now, Yin's time to respond is radically shortened.

When a party moves for summary judgement "[t]he current version of the Local Rules gives a party responding to a motion for summary judgment twenty-one days to respond." *Asbell v. Wal-Mart Stores Tex., LLC*, No. 4:17-CV-00273, 2018 U.S. Dist. LEXIS 161352, at *13 n.1 (E.D. Tex. 2018). Trial in this case begins on November 1, 2021. *See* Dkt. No. 81 at 1. Aspen's "Brief" was filed the evening of October 26, 2021. *See generally* Dkt. No. 120 (labeled as filed on "10/26/21" a Wednesday). This provides Yin only two business days to review Aspen's Brief, gather relevant facts on issues that have not been asserted before now, and write a response to the litany of various issues Aspen now seeks the Court to rule on **while preparing for trial**. As such, Yin is gravely and unfairly prejudice by Aspen's surprise briefing. *See Asbell v. Wal-Mart Stores Tex., LLC*, No. 4:17-CV-00273, 2018 U.S. Dist. LEXIS 161352, at *4–5 (E.D. Tex. 2018). Additionally, entering into trial without a ruling on the newly asserted issues is gravely prejudicial to Yin as now Yin would be required to fully brief the issues asserted by Aspen without fair notice thereby stealing Yin's counsel's time and energy from trial. *See Asbell v. Wal-Mart Stores Tex., LLC*, No. 4:17-CV-00273, 2018 U.S. Dist. LEXIS 161352, at *4–5 (E.D. Tex. 2018). The highly prejudicial nature of this filing shows no excusable neglect exists. *See Asbell v. Wal-Mart Stores Tex., LLC*, No. 4:17-CV-00273, 2018 U.S. Dist. LEXIS 161352, at *4–5 (E.D. Tex. 2018).

### b. *The Delay Caused by Allowing Aspen to Now Assert these Issues Weighs Against finding Excusable Neglect*

The second factor of length and delay weighs in Yin's favor as postponing trial to allow Yin to properly respond to a motion for summary judgment would be 21 days as provided under the Local Rules. "District courts in the Fifth Circuit have found delays as short as a few weeks as too long to find excusable neglect." *Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 U.S. Dist. LEXIS 92632, at *6 (E.D. Tex. 2017). In addition to the time for Yin to respond to this motion for summary judgment, Aspen's response, and your Honor's consideration on the matter would only add to the time required to hear this matter. At a minimum this delay exceeds a "few weeks" and is thus too long to find excusable neglect. *Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 U.S. Dist. LEXIS 92632, at *6 (E.D. Tex. 2017).

### c. *Aspen's Lack of a Reason for Delay Weighs in Favor Against Find Excusable Neglect*

The third also weighs in Yin's favor and against finding excusable neglect. Aspen's counsel when prompted for an answer as to the reason for delay provided no basis such as fraudulent concealment or finding new facts that could not have been discoverable at the time. Aspen's counsel merely stated that they would have preferred to have filed the matter back in July. "[E]xcusable neglect arguments have been rejected when the information [a party relies] on when filing their motion was known, or should have been known, before the dispositive motion deadline. *Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 U.S. Dist. LEXIS 92632, at *9 (E.D. Tex. 2017). Aspen made no argument suggesting they were unaware of the facts that form the basis of its attempt to exclude evidence. As such Aspen simply failed to put forth their argument in a timely manner.

### d. *Aspen's Lack of Good Faith In Now Asserting these Issues Weighs in Favor Against Finding Excusable Neglect.*

The final factor of good faith is also in Yin's favor. Aspen is using this untimely "brief" to distract and disrupt Yin's trial preparation.  These issues were never raised in the parties' numerous prior meetings, filings, depositions, briefs, or other papers.

### e.   Aspen Has and Asserted Good Cause And Further Cannon Show Good Cause to Extend the Dispositive Deadlines Set by This Court

Aspen cannot show "good cause" under Rule 16 of the Federal Rules of Evidence to extend the dispositive deadline.

> The Fifth Circuit has established four factors the Court should consider when determining whether good cause exists: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; (4) the availability of a continuance to cure the prejudice.

*Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 U.S. Dist. LEXIS 92632, at *10-11 (E.D. Tex. 2017).

First, Aspen does not provide any explanation as to why they could not timely move to extend the dispositive motion deadline. Aspen does not assert any facts in its brief why these issues have not been waived such as inability to find this information before the deadline or even that by conducting discovery Aspen still would not have found the information. Because no adequate explanation is provided "this factor weighs against finding good cause to extend the deadline." *Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 U.S. Dist. LEXIS 92632, at *11-12 (E.D. Tex. 2017).

Second, the importance of amending the scheduling order weighs against finding good cause. Trial is currently set for November 1, 2021. *See* Dkt. No. 81 at 1. Extensive time and preparation has been made to follow the Court's Amended scheduling order and adhere to the allotted judicial resources as provided by the Courts management of its own docket. Additionally,

the issues Aspen asserts should be heard by the Court in its "Brief" are collateral issues that do not dispose of the need for trial. The best-case scenario for Aspen is that Aspen would only be found liable for the actual cash value of the claim. However, a trial will still be necessary for findings of fact to be determined. As such, the importance of amending the Amended Scheduling Order to hear these issues is de minims in comparison to the great delay it would cause this Court, the parties, and the jury members. This factor weighs in favor against finding good cause. *Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 U.S. Dist. LEXIS 92632, at *12-13 (E.D. Tex. 2017).

Third, the potential prejudice in allowing the amendment also weighs against finding good cause. As stated above if the amendment on these issues were allowed Yin's Counsel's time and resources would be taken away from not only preparation for trial but trial itself. These issues potentially continuing on during trial and further disrupting the trial preparation and the trial process itself expose Yin to serious prejudice. "[B]ecause of the possibility of prejudice the court has broad discretion to preserve the integrity and purpose of the pre-trial order." *Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 U.S. Dist. LEXIS 92632, at *13 (E.D. Tex. 2017). Due to prejudice to Yin this factor weighs in favor against finding good cause.

Fourth, while a continuance here might would cure prejudice the cure would only be slight as Yin's counsel has already rescheduled another trial, depositions, meetings, and deadlines to ensure time before, during, and after this trial to adequately prepare and represent their client. "Further, district judges have broad 'discretion not to grant a continuance,' because they have the 'power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.'" *Lafontaine v. Tween Brands, Inc.*, No. 4:16-CV-335, 2017 U.S. Dist. LEXIS 92632, at *13–14 (E.D. Tex. 2017) (quoting *S&W Enters. v. Southtrust Bank of Ala.*, 315 F.3d 533 (5th

Cir. 2003). Due to the remaining prejudice to Yin and Yin's counsel even should a continuance be granted, this factor weighs in favor of finding against good cause.

Finally, Aspen is unable to show that despite its diligence it could not have met the deadline. Aspen participated in discovery and gathered the necessary facts during this process on which Aspen now bases its arguments. Discovery in this case ended May 21, 2021. Dkt. No. 81 at 5. Dispositive motion including *Daubert* motions were due July 18, 2021. Dkt. No. 81 at 4. Therefore, Aspen could have met the deadline to file a dispositive motion regarding these issues by the deadline and this factor weighs in favor against finding good cause.

Aspen is thus waived and is barred from now asserting on the eve of trial that Yin failed to perform certain requirements under the Policy to recover the replacement cost value.

4.   *Yin May Still Receive the Replacement Cost Value as the 180 Day Notice Provision is Not Applicable and Yin Can Show At Trial It Has Not Failed to Replace the Roof Within a Reasonable Time.*

Yin is entitled to the replacement cost value of the claims because the 180-day notice provision is inapplicable to this case, and because Yin can show the delay in repairing and replacing its roofs was not unreasonable.

"Texas courts construe contract language according to 'the ordinary, everyday meaning of the words to the general public.'" Dkt. No. 120 at 8 (citing *U.S. Fidelity & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 607 (Tex. 2008)). In reading a policy "every contract should be interpreted as a whole and in accordance with the plain meaning of its terms." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892–93 (Tex. 2017). Here, the Policies are replacement cost value policies that provide Yin the Replacement cost for covered damage to the properties. Dkt. No. 84-2 at 12, 46.

| OPTIONAL COVERAGES (Applicable only when entries are made in the schedule below) | | | | | Replacement Cost (X) | | |
|---|---|---|---|---|---|---|---|
| | | | Agreed Value | | Building | Personal Property | Including "Stock" |
| Prem. No | Bldg. No | Exp. Date | Coverage | Amount | | | |
| | | | | | X | X | |
| | | | Inflation Guard Percentage | *Monthly Limit Indemnity (Fraction) | *Max. Period Of Indemnity (X) | *Ext. Period Indemnity (Days) | |
| Prem. No | Bldg. No | Building | Personal Property | | | | |

However, the policies provide Yin the option to receive the actual cash value for the damaged property.  Dkt. No. 84-2 at 46.

> You **may** make a claim for loss or damage covered by this insurance on an actual cash value basis *instead of* on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, ***you may still make a claim for the additional coverage*** this Optional Coverage provides ***if you notify us of your intent to do so within 180 days*** after the loss or damage.

Dkt. No. 84-2 at 46 (emphasis added).

Only if Yin elects to receive the actual cash value instead of the replacement cost value is Yin required to give notice to Aspen of electing to receive the additional coverage within 180 days of the loss. *See* Dkt. No. 84-2 at 46. Aspen denied Yin's claims completely for both properties. Dkt. No. 84-8 at 2; Dkt. No. 84-9 at 2. Because of the complete denial Yin never had a full opportunity to elect to receive the actual cash value in lieu of the real cost value and as such was not required to provide Aspen with notice of its election to receive additional coverage. *See* Dkt. No. 84-2 at 46. It would be unreasonable to expect Yin elect to receive on an actual cash value basis after already being denied on both claims. Now Aspen seeks to punish Yin despite Aspen being the party to the contract that cut Yin's time short.

As a result, Yin is not excluded under the Policies from receiving the replacement cost value based on the 180 days provision.

### a. *Aspen's Conduct Made It Impossible for Yin to Repair or Replace and Yin Was Thus Excused*

Aspen's argument that Yin is not entitled to the replacement cost value fails because it was impossible for Yin to financially afford the cost to repair and replace all of the damaged roofs. *See Triyar Cos., LLC v. Fireman's Fund Ins. Co.*, 515 S.W.3d 517, 522–25 (Tex. App.—Houston [14th Dist.] 2017). Any contractual requirement that required Yin to actually repair and replace the roof to be entitled to the replacement cost value may be excused due to impossibility where the insurer fails to pay the actual cash value for the damage and the insurer cannot otherwise afford to repair or replace all of the damaged property. *See Triyar Cos., LLC v. Fireman's Fund Ins. Co.*, 515 S.W.3d 517, 522–25 (Tex. App.—Houston [14th Dist.] 2017).

Again, there is a reason why the Court ordered dispositive issues be submitted to the Court by July 18, 2021, so that the parties would have sufficient time to fully brief the Court on legal issues and gather and present the Court with relevant facts to support parties' contentions. Additionally, there is a reason Aspen is required to plead with particularity what conditions precedent Yin allegedly failed to satisfy so as to provide Yin notice as to what facts they must present to the Court and Jury to prove its case. Without sufficient opportunity to gather facts for the Court Yin may only allude to the facts that would be presented at trial on this issue.

### b. *Aspen's Denial of Yin's Claims Cut Short the Yin's Opportunity to Make an Actual Cash Value Election*

Here, Aspen denied Yin's claims and did not provide any payment for either property. *See* Dkt. No. 84-8 at 2–3; Dkt. No. 84-9 at 2–3. As a result Yin was forced to cover any costs financially to repair and replace property that was damaged by the covered hail storm. However, as Yin's expert's estimate shows, the cost to fully repair and replace the damage is $ 5,295,868.30. *See* Dkt. No. 84-15 at 2; Dkt. No. 84-16 at 2. Yin did make some repairs and replacements to the

properties. *See* Dkt. No. 84-14 at ¶93. However, Yin did not have the financial resources to fully repair and replace all of the damage, and without the contracted for financial assistance Yin had bargained for with Aspen, Aspen now argues Yin was required to perform the impossible task to cover the full cost of repair and replacement.

### c. *Aspen Relies on Inapplicable Cases Where Insurer Actually Provided Payment to Repair and Replace the Insured property*

The cases cited by Aspen are wholly inapposite and irrelevant—they all involve cases where the insured ***was actually paid*** the actual cash value on the claim and thereafter failed to make repairs and replace the damaged property. *See, e.g.*, *Fitzhugh 25 Partners, L.P. v. KILN Syndicate KLN 501*, 261 S.W.3d 861, 863 (Tex. App.—Dallas 2008) ("Underwriters paid Fitzhugh $ 283,460.21 as the actual cash value of the property. . . . its investment in the business center was not a "replacement" of the damaged apartment complex.").

Because Yin did not have the financial resources and could not obtain such resources but does intend to repair and replace the damaged property that is covered Yin was excused from any requirement to first repair and replace damaged property. *See Triyar Cos., LLC v. Fireman's Fund Ins. Co.*, 515 S.W.3d 517, 522–25 (Tex. App.—Houston [14th Dist.] 2017).

### 5. *Aspen's Material Breach Stopped Any Contractual Requirements of Yin.*

Aspen is precluded from using a condition precedent for making what is in essence an argument for summary judgment regarding replacement cost payment. "It is elementary that one who prevents or makes impossible the performance of a condition precedent upon which his liability under a contract is made to depend cannot avail himself of its nonperformance." *II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 265 (Tex. App.—San Antonio 2001, pet. denied) (citing *Rich v. McMullan*, 506 S.W.2d 745, 747 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.)). By refusing to pay the full amount of actual cash value for damages and in fact,

paying ***nothing***, Aspen made it impossible for Yin to repair or replace the damaged property within the constrained time period.

The Policy was entered into by Aspen to provide monetary support should the need ever arise to repair and replace damaged property under a covered cause of loss.  Here no payments have been made by Aspen.  *See* Dkt. No. 84-8 at 2–3; Dkt. No. 84-9 at 2–3. As such there is a genuine issue of material fact still to be determined as to whether Aspen's wrongful denial of a covered claim prevented Yin's performance of the alleged condition precedent to repair and replace damaged Property in order to recover replacement cost value. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("Prevention of performance by one party excuses performance by the other party, both of conditions precedent to performance and of promise."). Because Aspen's wrongful acts prevented Yin's fulfillment of the replacement cost provisions after having substantially complied with Policy, Yin is treated as having complied with the condition precedent. *See Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see, e.g.*, *Sanderson v. Sanderson*, 130 Tex. 264, 270, 109 S.W.2d 744, 749 (Comm'n App. 1937) ("If the incompleteness of Mrs. Sanderson's performance of her obligation were not chargeable to Mrs. Kelton's wrongful act, Mrs. Sanderson would be denied specific performance because of failure to perform fully, but in our opinion the substantial performance by Mrs. Sanderson and the fact that full performance was wrongfully prevented by Mrs. Kelton place Mrs. Sanderson, for the determination of her right to maintain a suit for specific performance, in the same position that she would occupy if she had fully performed.").

As such, this is not an issue that may be dispensed by a Court ruling. Should this issue be permitted to be addressed at trial there are issues of fact as to whether Aspen's acts were committed in bad faith.

6.      *Bryan Hill Disclosed The Basis of His Opinion To Replace and Repair Damaged Property By Citing What Damage Was Found At the Property, The Likely Cause, and The Extent of Damage.*

Aspen falsely states Bryan Hill failed to disclose the basis, facts, and data used to form his opinion on why property should be repaired or replaced. Mr. Hill in fact has through produced expert reports, declarations, and deposition stated precisely on what facts he relies, methodology he uses, and data was obtained to form his opinion to the properties.

Aspen instead takes issue with Mr. Hill's conclusions on what property should be replaced versus repaired. The proper manner for attacking what a party perceives to be shaky evidence however is not exclusion, but rather "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Collins v. Safeco Ins. Co.*, No. 3:18-CV-01788-X, 2020 U.S. Dist. LEXIS 2612, at *4 (N.D. Tex. Jan. 8, 2020). This is because "questions relating to the bases and sources of an expert's testimony affect the weight to be assigned that opinion rather than its admissibility." *Collins v. Safeco Ins. Co.*, No. 3:18-CV-01788-X, 2020 U.S. Dist. LEXIS 2612, at *4 (N.D. Tex. 2020)

Mr. Hill noted during his deposition several methods upon which he relies, such as laboratory tests of various roofing material to discern when hail can cause damage to commercial roofing systems. Dkt. No. 84-24 at 79:4–80:15. Applying such methodology with facts observed Mr. Hill then directly provided his opinion on what areas of the properties needed to be replaced based on them exhibiting signs of both "physical damage and functional damage as a result of hail." Dkt. No. 84-24 at 118:1–18 (explaining his basis for why A1, A2, A3, A4, A5, and A6 roof sections did or did not require replacement); *see also* Dkt. No. 84-14 at ¶72 page 30 (describing methodology for determining damage to mod-bit roofing); Dkt. No. 84-14 at ¶63 page 26 (stating methodology for determining hail damage to metal panels). In explaining the basis for his opinion

to replace roof sections, Mr. Hill alerted Aspen that repair would not be sufficient for different sections of the roof. For example, Mr. Hill explained that roof section A2 required replacement because of elevated moisture levels found in the roof and because the life span of the roof itself had been reduced. Dkt. No. 84-24 at 119:3–120:4.

Additionally, Mr. Hill included in several declarations based on his reports that throughout the roofs he "identified hail-caused impact fractures in the EIFS that were approximately 2.0 inches in diameter and round areas of granular displacement from mod-bit roofing membranes that exposed bitumen, reinforcement fibers and fractured the membrane." Dkt. No. 84-14 at ¶59 page 25. Moreover, Mr. Hill evaluated, recorded, and reported burnish marks and dents, the direction of hail fall, and the types of metal to calculate hail diameter accurately. Dkt. No. 84-14 at ¶65 page 27. Mr. Hill ultimately opined on the fact that "damaging hail resulted in physical damage" including dents and fractures to the roofs. Dkt. No. 84-14 at ¶71 page 30. Based on his observations, various tests and documents relied on, and data such as hail size, hail-fall direction, roof types, roof age, damage threshold, and the extent of damage to the roof Mr. Hill provided recommendations as to what property should be replaced or repaired.

Because Aspen appears to take issue with Mr. Hill's conclusions on why repairs are not sufficient and not the method in which Mr. Hill reached those conclusions Mr. Hill's testimony should not be limited in scope and Aspen should instead seek to question Mr. Hill on his basis for recommending replacement instead of repair. *See Collins v. Safeco Ins. Co.*, No. 3:18-CV-01788-X, 2020 U.S. Dist. LEXIS 2612, at *4, 16–19 (N.D. Tex. 2020).

Having fully disclosed the basis of his opinion Mr. Hill's testimony should not be excluded as to what property should be replaced or repaired.

7.   *Steve Shannon Disclosed In His Report The Basis of His Opinion By Stating He Visited The Property to Observe Damage, That He Used a Specific Tool to Create a Cost*

*Estimate For Both ACV and RCV, and that He Additionally Used Various Other Resources in Opining to Costs Such As Bryan Hill's Report.*

Aspen falsely states that Steve Shannon failed to disclose the basis, facts, and data used to form his opinion on the actual cost value and replacement cost value for the properties. Mr. Shannon states in his reports that he visited the properties, observed the damage and extent of the damage, used Bryan Hill's findings, and used specific professional software to calculate the replacement cost value and the actual cash value of both properties. *See* Dkt. No. 84-15 at 2, 4; 84-16 at 2, 4. Aspen's allegations that Mr. Shannon did not disclose the methodology for his opinion and the facts is simply untrue. A court analyzes the reliability of an expert "based on the reasonableness of the expert's approach." *Collins v. Safeco Ins. Co.*, No. 3:18-CV-01788-X, 2020 U.S. Dist. LEXIS 2612, at *16 (N.D. Tex. Jan. 8, 2020). Here, Steve Shannon used professional software as the basis for calculating costs. *See* Dkt. No. 84-15 at 2, 4; 84-16 at 2, 4. Additionally, Steven Shannon visited the properties to observe the damage and reviewed various documents including Bryan Hill's reports and documents produced by Aspen such as the policy and J.S. Held's report. *See* Dkt. No. 84-15 at 2, 4; 84-16 at 2, 4. Any suggestion that Mr. Shannon failed to disclose the basis of his opinion as to the actual cash value and replacement cost value are disingenuous.

Having fully disclosed the basis of his opinion Mr. Shannon's testimony should not be excluded as to the replacement cost value.

### III.    Conclusion

Aspen has waived any argument they may have regarding Yin not being owed the replacement cost value for failure to timely plead, failure to raise objections in the jury charge, failing to state those issues as contested facts and legal issues, and by failing to comply with the Court's Amended Scheduling Order. Further, no relief was requested by Aspen and relief should

not be given due to the amount of undue prejudice it would cause Yin. Additionally, the issues raised by Aspen are moot and non-dispositive due to the fact issues that remain regarding impossibility and Aspen's material breach of the contract relieving Yin of its contractual duties. Finally, Yin's experts' testimony should not be limited as the proper disclosures were made and the weight of their testimony "should be left for the jury's consideration." *Collins v. Safeco Ins. Co.*, No. 3:18-CV-01788-X, 2020 U.S. Dist. LEXIS 2612, at *4 (N.D. Tex. Jan. 8, 2020).

Respectfully submitted,

*/s/ Vincent P. Circelli*
Preston J. Dugas III
State Bar No. 24050189
preston@pjdlawfirm.com
**PRESTON DUGAS LAW FIRM, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone:     (817) 945-3061
Facsimile:     (682) 219-0761

Vincent P. Circelli
State Bar No. 24058804
vcircelli@circelliwalterlaw.com
Kelli L. Walter
State Bar No. 24074576
kwalter@circelliwalterlaw.com
**CIRCELLI & WALTER, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
(817) 697-4942 telephone
(817) 697-4944 facsimile

**ATTORNEYS FOR YIN**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing instrument was served on all parties through counsel of record pursuant to the Federal Rules of Civil Procedure on October 29, 2021 in manner described below:

Brook F. Minx
John J. Smither
Thomas A. Zabel
**ZABEL FREEMAN**
1135 Heights Blvd.
Houston, Texas 77008

*/s/ Vincent P. Circelli*